UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                          Plaintiff,<br>    v.<br><br>STEVEN T. LOO,<br><br>                          Defendant. | CASE NO. 2:24-cr-00072-LK<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTIONS IN LIMINE AND GRANTING MOTION TO SEAL |

This matter comes before the Court on the Government's Motions in Limine, Dkt. No. 35, and its Motion to Seal Documents, Dkt. No. 33. For the reasons explained below, the Court grants the motion to seal and grants in part and denies in part the Government's motions in limine.[1]

### I. BACKGROUND

The Government alleges that Loo "concealed and failed to report a total of approximately $4.8 million in income for the tax years 2015 through 2020." Dkt. No. 1 at 2. Based on that alleged

---

[1] Because the Court can decide the matter based on the parties' written submissions, the Court denies Loo's request for oral argument. Dkt. No. 37 at 1. The Court notes that Local Criminal Rule 23.1(6) does not permit replies to motions in limine; however, based on Loo's responses, the Court would have requested a reply and therefore considers the Government's reply, Dkt. No. 38.

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS IN LIMINE AND GRANTING MOTION TO SEAL - 1

1 scheme, the Government plans to try Loo before a jury for six counts of Tax Evasion in violation
2 of 18 U.S.C. § 2 and 26 U.S.C. § 7201, and six counts of Making and Subscribing to a False Tax
3 Return in violation of 18 U.S.C. § 2 and 26 U.S.C. § 7206(1). Dkt. No. 1 at 5–8. Trial is scheduled
4 to begin on June 30, 2025. Dkt. No. 26 at 2.

5 As a defense, Loo plans to assert that he believed that "the Tax Code allowed him to offset
6 taxable income" from his business against net operating losses ("NOLs") from two family owned
7 businesses—T-One and Nex-Gen. Dkt. No. 37 at 2–3. Stated another way, he believed that he
8 could "pay profits from property-owning LLCs as Asset Management Fees ('AMFs') to offset
9 [NOLs] held by T-One, LLC, and Nex-Gen, LLC[.]" *Id.* at 1.

10 The Government moves in limine to exclude the following four categories of evidence:
11 (1) emails between Loo and his property manager, (2) an overheard conversation between Loo and
12 his wife about alleged advice from Loo's tax preparer, (3) "[i]mproper character evidence of Loo's
13 lack of criminal history," and (4) "[a]ny reference to an interview of Loo conducted by criminal
14 investigators on May 30, 2023." Dkt. No. 35 at 2, 8. Ultimately, the parties were able to agree
15 about the first issue as described below, but the other three issues remain in dispute. *See generally*
16 Dkt. No. 37.

17 **II.   DISCUSSION**

18 **A.   Legal Standard**

19 Parties may move "to exclude anticipated prejudicial evidence before the evidence is
20 actually offered," *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984), and the Court enjoys "wide
21 discretion in determining the admissibility of evidence," *United States v. Abel*, 469 U.S. 45, 54
22 (1984). The Court may amend, renew, or reconsider its rulings in limine in response to
23 developments at trial. *Luce*, 469 U.S. at 41–42. The Court's analysis is guided by Federal Rules of
24 Evidence 401 and 403. *See Houserman v. Comtech Telecomms. Corp.*, 519 F. Supp. 3d 863, 867

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS IN LIMINE AND GRANTING MOTION TO SEAL - 2

(W.D. Wash. 2021). A party seeking the admission of evidence bears the burden of establishing its admissibility. *United States v. Bellucci*, 995 F.2d 157, 160 (9th Cir. 1993).

**B.     The Government's Motions in Limine Are Granted in Part and Denied in Part**

    1.  <u>Loo's Emails with His Property Manager</u>

The Government moves to exclude emails between Loo and his property manager, Jeffrey Cunningham, about net operating losses held by T-One, arguing that the statements in these emails are "self-serving hearsay" that Loo plans to offer to bolster his "loss offset" theory. Dkt. No. 35 at 5–6. The Government notes that to obtain convictions, it must "prove that Loo acted 'willfully' and that he 'intentionally' violated his duties under federal tax laws." *Id.* at 5 (citing Ninth Cir. Manual of Model Crim. Jury Instr. 22.6 (2022 ed.)). The Government anticipates that "the defense will argue that Loo genuinely believed he had no income to report because his business profits were offset by losses, and thus did not 'willfully' violate the tax laws." *Id.*; *see also id.* (explaining that Loo will present evidence that he believed that his businesses—T-One and Nex-Gen—"had suffered losses from business investments many years ago, and that he thought he could use those supposed losses to offset the profits from his other businesses, eliminating any tax liability").

Loo responds that the emails are not hearsay because he does not plan to offer them for the truth of the matter asserted—that "T-One and Nex-Gen were still carrying large NOLs when he sent the emails"—but rather as evidence that he *believed* there were such losses. Dkt. No. 37 at 1, 5. In its reply, the Government states that with that limitation, it withdraws its motion to exclude exhibits C through F, Dkt. Nos. 35-3–35-6. Dkt. No. 38 at 1. Consequently, the Court grants this motion in limine in part: Loo can present the statements to show that he believed the losses existed, but not to prove that the losses actually existed. The parties should propose a limiting instruction to this effect.

2. <u>Statements Regarding Loo's Tax Preparer</u>

The Government seeks to preclude Loo's adult son, Steven S. Loo, from testifying that he overheard his parents discussing that "the AMF plan" was permissible based on advice from JD/CPA Gary Johnson. Dkt. No. 34 at 8; Dkt. No. 37 at 2, 8.[2] The Government argues that Loo is trying to use his son as "a medium" to present "Loo's out-of-court statements about supposed advice from Johnson," which are "inadmissible hearsay." Dkt. No. 34 at 8. The Government further contends that this evidence can come in other, more reliable, ways "including testimony by Loo, cross-examination of Johnson, or other admissible records." *Id.*

In response, Loo does not dispute that the statements between himself and his wife about what Johnson allegedly said are hearsay, but argues that the statements are admissible under Rule 807's residual exception "because of their exceptional reliability." Dkt. No. 37 at 8. He contends that "[t]here is no reason for spouses to lie to each other about their intended evasion when no one else is around. The overheard exculpatory statements made by the Loos in private are the best evidence that the charged tax-evasion scheme never existed." *Id.*

Rule 807's residual exception provides that hearsay statements may be admitted if:

(1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and

(2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

Fed. R. Evid. 807(a). While the rule provides district courts with "a fair degree of latitude and flexibility to admit statements that would otherwise be hearsay," *United States v. Bonds*, 608 F.3d 495, 501 (9th Cir. 2010) (citation modified), the Ninth Circuit has cautioned that this rule "is not

---

[2] Steven S. Loo is now a Seattle Police Department officer, Dkt. No. 37 at 8, but it is unclear whether he held that position at the time of the alleged conversation, Dkt. No. 38 at 5 n.1.

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS IN LIMINE AND GRANTING MOTION TO SEAL - 4

to be used as a new and broad hearsay exception, but rather is to be used rarely and in exceptional circumstances," *Fong v. Am. Airlines, Inc.*, 626 F.2d 759, 763 (9th Cir. 1980).

The Government argues that the statements do not meet either of the two requirements of the residual exception. Dkt. No. 38 at 4–6. The Court agrees on both fronts, and as to both levels of hearsay presented (that is, the Loos' statements to each other, and the underlying hearsay about what Johnson allegedly said). As the Government contends on the first element, Loo had a motive to lie to his wife or at least keep her in the dark about the scheme. Dkt. No. 38 at 4–5 ("Loo had a motive to portray himself to his family as the innocent victim of bad advice, rather than as a tax cheat."). The reliability of the overheard statements is further undermined because they are contradicted by Loo's statements during his recorded interview that he did *not* ask Johnson for advice about this issue. *Id.* at 5 (citing Dkt. No. 38-1 at 42–43, 90). Accordingly, the statements about what Steven S. Loo allegedly heard his parents say are not supported by sufficient guarantees of trustworthiness. *See, e.g.*, *Fong*, 626 F.2d at 763 (requiring at least "circumstantial guarantees of trustworthiness equivalent to those present in the traditional exceptions to the hearsay rule").

The second element is not met either because Loo has other means of presenting evidence about the substance of Johnson's advice, including Johnson's testimony and cross-examination. Nor does this case present the type of exceptional circumstances warranting application of the residual exception. *See, e.g.*, *United States v. Sanchez-Lima*, 161 F.3d 545, 547–48 (9th Cir. 1998) (finding exceptional circumstances when the Government had deported the witness). Allowing this testimony would enable Loo to present "exculpatory hearsay statements" without subjecting himself to cross-examination, which is "precisely what the hearsay rule forbids." *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1998); *see also United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) (affirming district court's decision to preclude defendant from eliciting his own exculpatory hearsay statements; holding that a defendant's non-self-inculpatory statements are

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS IN LIMINE AND GRANTING MOTION TO SEAL - 5

inadmissible hearsay); *United States v. Kortright*, No. CR-21-00443-001-TUC-JCH (LAB), 2022 WL 16793418, at *4 (D. Ariz. Nov. 8, 2022).

Accordingly, the Court grants the Government's motion in limine on this issue and will not allow Steven S. Loo to testify about what he allegedly heard his parents say about Johnson's advice.

### 3. Loo's Statements from His December 2021 Interview About His Lack of Criminal History

The Government plans to play "selected segments" of Loo's "lengthy" December 23, 2021 interview with Special Agent Lopez and an Internal Revenue Agent, but seeks to exclude two statements therein about his lack of criminal history and experience with the criminal justice system. Dkt. No. 35 at 9–11 & n.2. Although the parties agreed during their meet and confer that the defense would not raise Loo's lack of a criminal record at trial, Loo nevertheless seeks to introduce two statements he made about that issue during his December 2021 interview:

- Loo stated, "I don't even have a, you know, a traffic violation, right?" Dkt. No. 35 at 9 (quoting Dkt. No. 38-1 at 91).

- Loo stated, "I've never been down, down this road," referring to the criminal justice process. *Id.* (quoting Dkt. No. 38-1 at 126).

The Government contends that these statements are irrelevant, hearsay, improper character evidence, and unfairly prejudicial, and that the "rule of completeness" does not require their admission even if the Government seeks to admit other portions of the interview. *Id.* at 9–11. Loo responds that the two statements are "admissible, relevant, necessary for context, and not unfairly prejudicial." Dkt. No. 37 at 9.

*(a) The Statements Are Irrelevant and Unfairly Prejudicial*

The Government argues that the two statements are irrelevant "because a history of lawful conduct is 'simply irrelevant' to whether the defendant engaged in the charged conduct." Dkt. No.

35 at 10 (quoting *United States v. Walker*, 191 F.3d 326, 336 (2d Cir. 1999)). Loo responds that the statements are relevant because they speak to his "mental state during the interview," are "an explanation of Mr. Loo's motive for answering questions," and "explain his demeanor and approach in the lengthy interview with the longtime civil agent and the newly introduced criminal agent" during the interview. Dkt. No. 37 at 10. That is, as a result of his lack of familiarity with the criminal justice system, he consented to be interviewed without an attorney present and "ambiguously acknowledg[ed] SA Lopez's legal and factual conclusions instead of precisely refuting disputed statements and explaining when he was confused or learning from Lopez about tax law[.]" *Id.* at 11.

Evidence is relevant if (1) it tends "to make a fact more or less probable than it would be without the evidence," and (2) it is "of consequence in determining the action." Fed. R. Evid. 401. Rule 403 allows the court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Here, the statements are not relevant because they do not make any fact of consequence more or less probable. *See United States v. Chambers*, 800 F. App'x 43, 46 (2d Cir. 2020) ("[A] defendant may not seek to establish his innocence through proof of the absence of criminal acts on specific occasions" because an "occurrence of lawful conduct is simply irrelevant to other occurrences of unlawful conduct." (citation modified)). Furthermore, while Loo's mental state could speak to his demeanor during the interview, the statements do not speak directly to his mental state. In fact, the surrounding statements—which the Government does not seek to exclude—are more probative of that issue. Dkt. No. 38-1 at 91 (Loo stating that he was "shocked" to learn he was under investigation and stating, "I always see myself as a good guy"). Moreover, as the Government argues, any minimal probative value of the two statements is substantially outweighed by the

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS IN LIMINE AND GRANTING MOTION TO SEAL - 7

improper appeal to the jury's sympathy toward Loo as a historically law-abiding person. Dkt. No. 35 at 10; *see, e.g.*, *United States v. Blackstone*, 56 F.3d 1143, 1146 (9th Cir. 1995) (explaining that "[e]vidence is prejudicial if it appeals to the jury's sympathies" (citation modified)).[3] The Court thus excludes the statements under Rule 403. Even if Loo could have cleared that hurdle, however, the statements are excludable for additional reasons.

*(b) The Statements Are Hearsay*

The Government argues that the statements are hearsay, which Loo seeks to offer for the truth of the matter that he had no criminal history and was unfamiliar with the criminal justice system. Dkt. No. 35 at 9. Loo responds that the statements are excited utterances, made when "he was shocked to hear he was under criminal investigation," and admissible under Rule 803(2). Dkt. No. 37 at 9. To qualify for the excited utterance exception to the rule against hearsay, a statement must "relat[e] to a startling event or condition" and be "made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2). Courts applying the exception must determine that the declarant was "so excited or distraught" at the time of the statement "that he did not reflect (or have an opportunity to reflect) on what he was saying." *United States v. McLennan*, 563 F.2d 943, 948 (9th Cir. 1977). Contemporaneous 911 calls are a classic example of excited utterances. *Navarette v. Cal.*, 572 U.S. 393, 400 (2014). Here, Loo contends that he made the traffic violation statement because "he was shocked to hear he was under criminal investigation." Dkt. No. 37 at 9. However, the statement was made at least 90 minutes into the interview, and Loo was told when the law enforcement officer interviewing him "first came in" for the interview that he was under criminal investigation. Dkt. No. 38-1 at 91; Dkt. No. 38 at 7. Loo does not contend that he was in a prolonged state of shock when he later made the statements at issue. *See generally*

---

[3] The Advisory Committee Notes to Rule 403 explain that "undue prejudice" means "an undue tendency to suggest decision on an improper basis," and that a decision on an "improper basis" is "commonly, though not necessarily, an emotional one."

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS IN LIMINE AND GRANTING MOTION TO SEAL - 8

Dkt. No. 37; *see also United States v. Riggs*, No. 23-566, 2024 WL 3949101, at *2 (9th Cir. Aug. 27, 2024) (explaining that an "'out-of-court statement must be nearly contemporaneous with the incident described and made with little chance for reflection,' to be admissible under the excited utterance exception" (quoting *Bemis v. Edwards*, 45 F.3d 1369, 1372 (9th Cir. 1995)). The Court has also listened to the audio recording of the statements, Dkt. No. 38-2, and Loo does not sound panicked or otherwise in a heightened state of excitement when he made them.

   Loo also contends that the statements are "an explanation of [his] motive for answering questions, admissible under FRE 803(3)." Dkt. No. 37 at 10. His only elaboration on this contention is that "[t]he spontaneous statement speaks to [his] mental state during the interview, i.e., that he was unable to clearly process the present circumstances and offer clear, cogent responses to the questions posed." *Id.* A hearsay exception exists for "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health)[.]" Fed. R. Evid. 803(3). However, the statements at issue here are not about Loo's then-existing state of mind or physical condition. Moreover, "[t]he state-of-mind exception does not permit the witness to relate any of the declarant's statements as to why he held the particular state of mind, or what he might have believed that would have induced the state of mind." *United States v. Emmert*, 829 F.2d 805, 810 (9th Cir. 1987) (quoting *United States v. Cohen*, 631 F.2d 1223, 1225 (5th Cir. 1980) ("If the reservation in the text of the rule is to have any effect, it must be understood to narrowly limit those admissible statements to declarations of condition—'I'm scared'—and not belief—'I'm scared because Galkin threatened me.'")).[4] Loo thus cannot use the statements to prove why he may have felt a particular way during the interview, and this hearsay exception is inapplicable.

---

[4] As set forth above, the Government does not seek to exclude Loo's statement about his existing state of mind when he learned he was under criminal investigation: "I was like shocked." Dkt. No. 38-1 at 91.

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS IN LIMINE AND GRANTING MOTION TO SEAL - 9

*(c) The Statements Are Impermissible Character Evidence*

The Government contends that the statements must be excluded as "improper evidence of specific instances of conduct in violation of Federal Rules of Evidence 404 and 405." Dkt. No. 35 at 9. Loo contends that neither statement is improper character evidence because he seeks to use them to prove his mental state during the interview, and he "would not oppose a limiting instruction to the effect that the jury is not to consider Mr. Loo's criminal history or lack thereof[.]" Dkt. No. 37 at 10–11. He also asserts that the statement to the effect that he had never been down this road is "ambiguous and does not inexorably imply that he has no criminal record." *Id.* at 10.

A criminal defendant "may offer evidence of the defendant's pertinent trait," Fed. R. Evid. 404(a)(2)(A), but "[e]vidence of any other . . . act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," *id.*, 404(b)(1). Although a person's "law-abidingness" can be a pertinent trait, *United States v. Diaz*, 961 F.2d 1417, 1419 (9th Cir. 1992), that trait—and the absence of a prior criminal history— is character evidence that must be introduced in admissible form, *United States v. Barry*, 814 F.2d 1400, 1403–04 (9th Cir. 1987) (explaining that "prior good acts"—such as a lack of criminal history—is evidence that "must meet the standard of relevance and conform to the hearsay rule"). As set forth above, the two statements at issue are not admissible because they are not relevant, and even if they were, they are hearsay.

Moreover, admission of evidence about a lack of prior bad acts "is governed by Rules 404(b) and 405(b)." *Id.* at 1403. Loo does not seek to admit the evidence under Rule 404(b) to show he acted in accordance with his supposed law-abiding character trait, and the evidence is not admissible for that purpose. Rule 405(b) allows proof of specific instances of conduct in cases in which "a person's character or character trait is an essential element of a charge, claim, or

defense."[5] As the Government argues, Dkt. No. 35 at 10, Loo's lack of criminal history is not an essential element of any of the charges. And while Rule 404(a) permits testimony about a person's character trait in the "form of testimony as to reputation . . . or of opinion testimony," *Barry*, 814 F.2d at 1403, Loo's own two interview statements about himself are neither of these things. The statements are thus inadmissible character evidence.

Finally, the Court rejects Loo's proposal of "a limiting instruction to the effect that the jury is not to consider Mr. Loo's criminal history or lack thereof[.]" Dkt. No. 37 at 10–11. As the Government argues, "the defense's theory of admissibility—that Loo's lack of criminal history somehow explains his behavior during the interview—necessarily relies on offering the statements to show that Loo had no criminal history." Dkt. No. 38 at 10. Thus, "[t]o admit the statements and then instruct the jury that they cannot consider them as evidence that Loo had no criminal history would be baffling and contradictory." *Id.* The Court agrees that Rule 403 prohibits such a confusing and prejudicial approach.

### (d) The Rule of Completeness Does Not Require Admission of the Statements

Loo argues that the rule of completeness requires the Government to play all of Loo's recorded interview to provide "necessary context" and "avoid distortion of his interview statements." Dkt. No. 37 at 13. The Government opposes this position. Dkt. No. 38 at 9–10; *see also* Dkt. No. 35 at 11.

The "rule of completeness" embodied in Federal Rule of Evidence 106 requires that "[i]f a party introduces all or part of a statement, an adverse party may require the introduction, at that

---

[5] Loo relies on *Arizona v. Elmer* for the proposition that "state of mind evidence is not automatically character evidence," Dkt. No. 37 at 10, but in that case, the defendant's state of mind was relevant to the subjective element of his immunity defense, 21 F.3d 331, 335 (9th Cir. 1994). In contrast, Loo does not contend that the two interview statements are relevant to his state of mind when he performed the acts that underlie the alleged crimes. Loo also cites *United States v. Watkins*, Dkt. No. 37 at 10, but the court in that case did not address whether defendant's lack of a criminal record was character evidence, 591 F.3d 780, 786 (5th Cir. 2009).

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS IN LIMINE AND GRANTING MOTION TO SEAL - 11

time, of any other part—or any other statement—that in fairness ought to be considered at the same time. The adverse party may do so over a hearsay objection." Loo argues that "the Government should be required to play the recorded interview in its entirety," Dkt. No. 37 at 13, but the rule does not mandate the admission of complete prior testimony. Instead, "it is often perfectly proper to admit segments of prior testimony without including everything, and adverse parties are not entitled to offer additional segments just because they are there and the proponent has not offered them." *United States v. Collicott*, 92 F.3d 973, 983 (9th Cir. 1996) (quoting Mueller & Kirkpatrick Federal Evidence § 44 (1994)); *see also United States v. Santos*, 947 F.3d 711, 730 (11th Cir. 2020) ("Rule 106 does not automatically make the entire document admissible once one portion has been introduced"; rather, "Rule 106 permits introduction only of additional material that is relevant and is necessary to qualify, explain, or place into context the portion already introduced." (citation modified)); *United States v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014) ("[T]he Rule of Completeness is not so broad as to require the admission of all redacted portions of a statement, without regard to content."). The rule requires that "[w]hen one party has made use of a portion of a document, such that misunderstanding or distortion can be averted only through presentation of another portion, the material required for completeness is *ipso facto* relevant and therefore admissible[.]" *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 172 (1988); *see also Collicott*, 92 F.3d at 983 (the rule can require admission of a complete statement to prevent a party from introducing a "misleadingly-tailored snippet from [a] statement"); *Vallejos*, 742 F.3d at 905 (explaining that "if the complete statement does not serve to correct a misleading impression in the edited statement that is created by taking something out of context," Rule 106 does not apply and the full statement need not be admitted (citation modified)).

Loo contends that admitting the two statements is necessary to "avoid distortion of [his] other statements by robbing them of the context of Mr. Loo being in deeply unfamiliar territory

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS IN LIMINE AND GRANTING MOTION TO SEAL - 12

with a federal agent grilling him." Dkt. No. 37 at 12. He also argues that "[a]llowing the jury to hear Mr. Loo's spontaneous utterance that he didn't understand what was going on because he had never been through the process before, would allow the jury to accurately evaluate and contextualize Mr. Loo's other statements." *Id.* at 13 ("Mr. Loo's understanding of the purpose and consequences of the interview provides necessary context to avoid distortion of his interview statements."). However, neither of the two statements say that Loo "didn't understand what was going on," explain his understanding of the purpose and consequences of the interview, or state that "a federal agent [was] grilling him," *see id.* at 12–13, so admitting the statements is not necessary to correct any misleading impression about those issues. Nor does he identify a single statement he made in the interview that is misleading without the "context" of the two statements.[6] *See United States v. Thiam*, 934 F.3d 89, 96 (2d Cir. 2019) (after the prosecutor played excerpts of the defendant's post-arrest interview with the FBI, district court did not err in refusing to admit other portions under the rule of completeness; the rule "does not require introduction of portions of a statement that are neither explanatory of nor relevant to the admitted passages" (citation modified)).

Loo's desire to admit the statements to show that he was "in deeply unfamiliar territory," *id.* at 12, underscores that he seeks to admit the statements for a hearsay purpose: to establish the truth of the matter that he had no criminal history. However, as set forth above, the two statements are hearsay—unaccompanied by an applicable hearsay exception such as mental state—and "Rule 106 does not compel admission of otherwise inadmissible hearsay evidence." *Collicott*, 92 F.3d at

---

[6] In addition, as the Government notes, Dkt. No. 35 at 11 n.2, Loo is free to play any segment of the interview other than these two statements for context. However, this does give Loo carte blanche to play the rest of the interview in its entirety. He can play relevant portions to "correct a misleading impression in the edited statement that is created by taking something out of context," but "the Rule of Completeness will not be applied to admit the full statement." *Vallejos*, 742 F.3d at 905 (citation modified).

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS IN LIMINE AND GRANTING MOTION TO SEAL - 13

983 (citation modified); s*ee also United States v. Burreson*, 643 F.2d 1344, 1349 (9th Cir. 1981) (finding that a court did not abuse its discretion in excluding evidence under Rule 106 because it was irrelevant and inadmissible hearsay).

Loo also argues that without the statements, the jury might perceive him "to lack seriousness, be too agreeable, or scattered" during the interview, Dkt. No. 37 at 13, but Loo was told at the start of the interview that he was under criminal investigation, Dkt. No. 38-1 at 91. As the Government notes, Loo "did not need a criminal record or experience with IRS investigations to know that this was a serious matter." Dkt. No. 38 at 9. Accordingly, Rule 106 does not require the Court to admit the two statements.

### 4. Loo's May 2023 Interview

The parties agree that Loo's statements from his second interview in May 2023 will not be admitted. Dkt. No. 38 at 10; *see also* Dkt. No. 35-1 at 2 (explaining that Loo was interviewed again "[a]t the defense's suggestion"). Nevertheless, Loo seeks to cross-examine one of the Government's witnesses, former Special Agent Lopez, about "[t]he fact of the second [interview], that Mr. Loo answered all questions, and the [interview] included what the defense believed to be exculpatory evidence." Dkt. No. 37 at 13. The Government argues that this information is irrelevant, invites the jury to improperly speculate about what was said during the interview, and allows the defense to submit information about its "beliefs." Dkt. No. 35 at 12–13. Loo responds that "the quality of SA Lopez's investigation and his biases will be squarely at issue in his cross-examination" and "the defense will present abundant evidence that SA Lopez prejudged Mr. Loo as guilty, which led him to make and cause others to make numerous errors." Dkt. No. 37 at 13 ("The fact of the second presentation, that Mr. Loo answered all questions, and the presentation included what the defense believed to be exculpatory evidence, all are relevant considering additional steps SA Lopez took in response to the presentation.").

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS IN LIMINE AND GRANTING MOTION TO SEAL - 14

The Court agrees with the Government that Loo cannot present evidence that the defense believed that the evidence presented was exculpatory. As the Government notes, Dkt. No. 35 at 13, Loo can present evidence he believes to be exculpatory to the jury, but the opinions and beliefs of his counsel about the nature of the evidence presented are not relevant and their presentation to the jury would be improper, *United States v. Young*, 470 U.S. 1, 8–9 (1984) ("Defense counsel, like the prosecutor, must refrain from interjecting personal beliefs into the presentation of his case.").

Loo does not explain the relevance of the fact that Agent Lopez interviewed him again and Loo "answered all questions," instead vaguely asserting that these facts are "relevant considering additional steps SA Lopez took in response to the presentation." Dkt. No. 37 at 13. Because Loo does not think he should "be required to reveal [his] detailed cross-examination plan, [he] suggest[s] that the Court defer ruling on this motion in limine until an appropriate point in the trial." *Id.* at 14. This is the second time Loo has attempted to unilaterally provide himself with an extension of Court-imposed pretrial deadlines. *See* Dkt. Nos. 42, 44. That is not how litigation works. Pretrial motions (including motions in limine) were due on May 2, 2025, Dkt. No. 26 at 2, and responses were due on May 9, 2025, LCrR 12(b)(2). As the Government emphasizes, the point of motions in limine "is to allow parties to know in advance what evidence is in or out." Dkt. No. 38 at 11; *see also United States v. McElmurry*, 776 F.3d 1061, 1066 (9th Cir. 2015) ("[T]he point of in limine resolution of objections is to enable planning and avoid interruptions to a jury trial."). Loo agreed to the pretrial schedule and then failed to follow it. To the extent he believed that his response to this motion could not be divulged to the Government, he could have submitted that part of his argument under seal and requested *ex parte* review. He did not. Loo's failure to meaningfully respond to the Government's motion permits the Court to deem the opposition "without merit." LCrR 12(b)(4). However, despite the fact that Loo's repeated failure to abide by

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS IN LIMINE AND GRANTING MOTION TO SEAL - 15

the rules has disrupted the pretrial schedule for both the Government and the Court, Dkt. Nos. 42, 44, 45, 51–53, 60, the Court will provide him with one more opportunity to respond. Loo may file a response of no more than 800 words by June 12, 2025. The response must be limited to this particular motion in limine. The Government's reply thereto (which also shall not exceed 800 words) is due by June 17, 2025.

**C.     The Government's Motion to Seal is Granted**

The Government moves to seal exhibit G and the portion of its motions in limine that refers to the contents of that exhibit. Dkt. No. 33 at 1–2; Dkt. Nos. 34, 34-1 (sealed motions in limine and sealed exhibit). Loo does not oppose the motion. The exhibit (and the corresponding portion of the motion) "reference[] grand jury proceedings related to this matter, which are required to be kept under seal to maintain secrecy in accordance with Fed. R. Crim. Proc. 6(e)(6)." Dkt. No. 33 at 2. Federal Rule of Criminal Procedure 6(e)(6) provides that "[r]ecords . . . relating to grand-jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury." *See also* LCrR 49.1(d) (requiring materials related to grand jury matters to remain under seal).

Accordingly, the unredacted motion and exhibit G can remain under seal. Dkt. Nos. 34, 34-1.

### III.   CONCLUSION

For the reasons explained above, the Court GRANTS IN PART and DENIES IN PART the Government's Motions in Limine, Dkt. No. 35, and GRANTS the Government's Motion to Seal, Dkt. No. 33. Docket entries 34 and 34-1 can remain under seal. The parties must propose the limiting instruction referenced above by June 18, 2025.

The Clerk is directed to seal docket entry 38-1 because it contains personal identifiers, and the Government is ordered to file a redacted copy of that document within 14 days of the date of this Order.

Dated this 11th day of June, 2025.

*Lauren King*

Lauren King
United States District Judge