UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>  v.<br><br>STEVEN T. LOO,<br><br>      Defendant. | CASE NO. 2:24-cr-00072-LK<br><br>ORDER ON ADMISSIBILITY OF EXPERT TESTIMONY |

   This matter comes before the Court on the parties' June 20–22, 2025 submissions of their expert disclosures and rebuttal expert disclosures to the Court. For the reasons explained below, the Court finds that some of the expected expert testimony meets the requirements of Rule 702 of the Federal Rules of Evidence, and some does not—at least based on the record currently before the Court.

## I.  BACKGROUND

   The Government alleges that Loo "concealed and failed to report a total of approximately $4.8 million in income for the tax years 2015 through 2020." Dkt. No. 1 at 2. Based on that alleged

ORDER ON ADMISSIBILITY OF EXPERT TESTIMONY - 1

scheme, the Government plans to try Loo before a jury for six counts of Tax Evasion in violation of 18 U.S.C. § 2 and 26 U.S.C. § 7201, and six counts of Making and Subscribing to a False Tax Return in violation of 18 U.S.C. § 2 and 26 U.S.C. § 7206(1). Dkt. No. 1 at 5–8. Trial is scheduled to begin on June 30, 2025. Dkt. No. 26 at 2.

## II.  DISCUSSION

### A.  Legal Standard

Under Rule 702, a trial court may exercise discretion to allow expert testimony if the proponent "demonstrates to the court that it is more likely than not that" such testimony (1) "will help the trier of fact to understand the evidence or to determine a fact in issue;" (2) "is based on sufficient facts or data;" (3) "is the product of reliable principles and methods;" and (4) "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(a)–(d) (2023). "[B]efore admitting expert testimony, the district court must perform a 'gatekeeping role' to ensure that the testimony is both 'relevant' and 'reliable.'" *United States v. Valencia-Lopez*, 971 F.3d 891, 897–98 (9th Cir. 2020) (citation modified). "This gatekeeping obligation 'applies to all (not just scientific) expert testimony.'" *Id.* at 898 (quoting *United States v. Hermanek*, 289 F.3d 1076, 1093 (9th Cir. 2002)).

"Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry." *Primiano v. Cook,* 598 F.3d 558, 565 (9th Cir. 2010). "Relevancy depends on the particular law at issue because '[e]xpert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry.'" *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196–97 (9th Cir. 2014) (quoting *Primiano,* 598 F.3d at 565). And whether testimony is helpful within the meaning of Rule 702 is also "in essence a relevancy inquiry." *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1184 (9th Cir. 2002).

The reliability inquiry must focus on the basis for the expert's opinion. *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995). In other words, the inquiry "focuses not on 'what the experts say,' or their qualifications, 'but what basis they have for saying it.'" *United States v. Holguin*, 51 F.4th 841, 854 (9th Cir. 2022) (quoting *Daubert*, 43 F.3d at 1316). Where the relevant reliability concerns "focus upon personal knowledge or experience," *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999), the inquiry may cover "whether the expert's reasoning is adequately explained." *Holguin*, 51 F.4th at 854; *see also* Fed. R. Evid. 702, Advisory Committee's Notes to 2023 amendments (decisions holding "that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility. . . . are an incorrect application of Rules 702 and 104(a)").

Finally, the proponent of the expert testimony bears the burden of proving by a preponderance of the evidence that the testimony being proffered is admissible. *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

**B.    The Government's Proposed Expert: Revenue Agent Sandy Byrd**

The Government intends to call Sandy Byrd as an expert witness. Ms. Byrd is a Lead Internal Revenue Agent ("RA") for the Internal Revenue Service ("IRS"). RA Byrd holds a Bachelor of Science degree in Accounting from Central Washington University. She has been a certified public accountant in Washington since 2005, and she has worked for the IRS since 2001. She currently serves as a Special Enforcement Program RA with the IRS, and in that role, she assists with criminal investigations, including reviewing and analyzing financial and tax records, reconciling the reported income to the books and records, and preparing tax computations.

RA Byrd is expected to testify about tax concepts and background about tax filing and general IRS operations, including (1) the tax code requirements for reporting personal income, including the filing requirements for any person receiving net income from a business (Schedule

C Income), and the required filings on IRS form 1040; (2) the tax code requirements for reporting a corporation's or other business entity's earnings; (3) the tax code requirements for partnership business entities and that of the individual partners, including IRS form 1065 and IRS Schedule K-1; (4) the ability of an entity to offset taxable gains with losses; (5) the propriety of including corporate income and expenses on an individual tax return; (6) the IRS Schedule E for supplemental income and loss, its general applicability, and its particular applicability to income and losses in partnerships, and (7) the Internal Revenue Service's use of information provided in federal income tax returns and corporate tax returns for the purpose of tabulating and collecting income tax due and owing. RA Byrd is also expected to testify that based on the actual evidence of how T-One and Nex-Gen were used, and the activities related to them, the sole purpose of entities T-One and Nex-Gen during the relevant period was for Mr. Loo to evade assessment of income taxes.[1] Based on her analysis of the evidence, she is also expected to testify that the funds

---

[1] RA Byrd is expected to testify that T-One and Nex-Gen should be treated as disregarded entities for federal tax purposes because the entities and relevant transactions served no economic purpose other than to avoid or evade assessment of federal income taxes. The Supreme Court has long recognized "the importance of regarding matters of substance and disregarding forms," *United States v. Phellis,* 257 U.S. 156, 168 (1921), because "[t]he incidence of taxation depends upon the substance of a transaction," *Comm'r v. Court Holding Co.,* 324 U.S. 331, 334 (1945). Reflecting this principle, Section 7701(o) of the Internal Revenue Code provides that, "[i]n the case of any transaction to which the economic substance doctrine is relevant," a transaction will be treated as having economic substance only if it "changes in a meaningful way (apart from Federal income tax effects) the taxpayer's economic position" and "the taxpayer has a substantial purpose (apart from Federal income tax effects) for entering into such transaction." *See also* 26 U.S.C. § 7701(o). In applying this "economic substance doctrine," courts must consider "both subjective and objective factors in characterizing a transaction for tax purposes," focusing "holistically on whether the transaction had any practical economic effects other than the creation of income tax losses." *Slone v. Comm'r*, 810 F.3d 599, 605–06 (9th Cir. 2015) (citation modified); *see also Cashman v. United States*, 931 F.2d 896 (9th Cir. 1991) ("Subjectively, the taxpayer must have entered into the transaction with a bona fide business purpose other than tax avoidance. Objectively, the transaction must have been likely to produce economic benefits aside from tax benefits."). "If a common sense review of the transaction leads to the conclusion that a particular transaction does not have a non-tax business purpose or any economic substance other than creation of tax benefits, the form of that transaction may be disregarded, and the Commissioner may rely on its underlying economic substance for tax purposes." *Slone*, 810 F.3d 606 (citation modified).

RA Byrd is expected to testify that, taken in totality, the financial records and information show that the funds directed to T-One and Nex-Gen were effectively payments to Mr. Loo that were merely routed through those entities for the purpose of evading taxes. According to SA Byrd, this is so because (1) T-One and Nex-Gen had no significant business purpose or activity during the relevant period other than to receive payments from other businesses associated with Mr. Loo; (2) regardless of any formal or written allocation of ownership interests, T-One and Nex-Gen were effectively controlled and operated solely by Mr. Loo; (3) Mr. Loo directed payments from other businesses to T-One

ORDER ON ADMISSIBILITY OF EXPERT TESTIMONY - 4

directed to T-One and Nex-Gen were properly treated as taxable income to Mr. Loo, Mr. Loo failed to report that income for tax years 2015–2020, and the total amounts of such unreported income that were due and owing for these years totaled roughly 1.6 million dollars. Ms. Byrd's testimony is based on her training and experience, knowledge of the IRS code and related tax authority and guidance, and evidence and records obtained during the investigation associated with this case.

Based on the Court's review of the Government's disclosures, the Court finds that RA Byrd is qualified as an expert under Federal Rule of Evidence 702. Although RA Byrd discloses some of her opinions and the basis for them (e.g., that T-One and Nex-Gen should be treated as disregarded entities), she does not provide other opinions or their bases (e.g., the specific basis for concluding that Mr. Loo's underreported income totaled roughly 1.6 million dollars). Therefore, the Court cannot conclude at this juncture that all of her opinions are reliable.

C.    **The Defense's Proposed Expert: Professor Reuven S. Avi-Yonah**

The defense intends to call Professor Reuven S. Avi-Yonah as an expert witness. Professor Avi-Yonah has received a master's degree, a Ph.D., and a J.D. from Harvard University. He taught as an assistant professor of law at Harvard Law School from 1994–2000, and as a professor of law at University of Michigan Law School from 2000 to the present.

Professor Avi-Yonah is expected to testify about tax concepts; tax code requirements; background; form filings; and partnership, corporate, and individual tax principles; and use of information listed in items (1) through (7) above with respect to RA Byrd for the purpose of

---

and Nex-Gen; (4) the payments were generally designated by Mr. Loo as "asset management" or "consulting" or "professional" fees; (5) the funds directed to T-One and Nex-Gen were used extensively for the benefit of Mr. Loo, his immediate and extended family, and his other business interests; (6) the transfer of funds directed by Mr. Loo to T-One and Nex-Gen had no economic substance; and (7) the sole purpose of entities T-One and Nex-Gen during the relevant period was for Mr. Loo to evade assessment of income taxes.

ORDER ON ADMISSIBILITY OF EXPERT TESTIMONY - 5

tabulating and collecting income tax owed by Mr. Loo. He is also expected to testify about his disagreement with—and rebuttal to—RA Byrd's testimony, including but not limited to her testimony that Mr. Loo had unreported income and additional taxes due for the years 2015–2020. He is specifically expected to testify that T-One and Nex-Gen should be disregarded (but not for the reasons RA Byrd articulates),[2] the payments characterized as AMFs from the paying property-owning LLCs to Nex-Gen and T-One were tax free distributions to members of a *de facto* partnership including Mr. Loo and other people and entities,[3] and that payments labeled as AMFs

---

[2] Professor Avi-Yonah contends that the economic substance doctrine does not apply to this case because the transactions at issue were undertaken for the purpose of seeking profit. With respect to the objective aspect of the economic substance inquiry, "the question is whether a reasonable investor would enter into [the relevant] transaction for its possible investment gains." *Reddam v. Comm'r*, 755 F.3d 1051, 1060 (9th Cir. 2014). "Even if a transaction could as a theoretical matter result in economic gains, it nonetheless lacks substance if it was executed in such a manner as to insure that the net result would be tax deductible losses." *Id.* (citation modified); *see also, e.g., id.* at 1061 (finding that transactions lacked economic substance where, although "there was some theoretical possibility that [the] transaction would create a net economic gain," the "magnitude of even the most optimistic gain is dwarfed by the magnitude of the tax loss it was *designed* to generate and the strong probability of a pretax loss"); *Knetsch v. United States,* 364 U.S. 361, 365–66 (1960) (taxpayer's transaction with the insurance company "was a fiction" because for a claimed interest deduction of $233,297.68, the taxpayer's annual borrowing only kept a net cash value "at the relative pittance of $1,000"). Professor Avi-Yonah is expected to testify that the Asset Management Fees paid to T-One and Nex-Gen were treated as "suspense accounts" to hold cash temporarily until it was either needed for the business operations of the family businesses or by members of those businesses. Such payments were then "primarily used" to reinvest in the family business and to pay Mingwah Quon and Allen SooHoo for their personal needs, or they were retained in the T-One and Nex-Gen bank accounts. Avi-Yonah does not explain how these facts (or others) support his opinion that the transactions are issue were undertaken for the purpose of seeking profit.

[3] Professor Avi-Yonah will testify that T-One and Nex-Gen should be disregarded for tax purposes not under the economic substance doctrine, but rather because they are part of a *de facto* partnership formed by Mr. Loo, SooHoo and Quon Investments, Inc., and Soohoo and Quon Management, Inc. For tax purposes, a "partnership" is "a syndicate, group, pool, joint venture, or other unincorporated organization" that carries on "any business, financial operation, or venture" and that is not "a corporation or a trust or estate." 26 U.S.C. §§ 761(a), 7701(a)(2). "A partnership may be disregarded for federal tax purposes when it is determined that the partners did not 'really and truly intend[ ] to join together for the purpose of carrying on [a] business and sharing in the profits or losses or both.'" *Broadwood Inv. Fund LLC ex rel. Broadwood Inv. Holdings LP v. United States*, 611 F. App'x 440, 440–41 (9th Cir. 2015) (quoting *Comm'r v. Culbertson*, 337 U.S. 733, 741 (1949)); *see also Comm'r v. Tower,* 327 U.S. 280, 286–87 (1946) ("When the existence of an alleged partnership arrangement is challenged by outsiders, the question arises whether the partners really and truly intended to join together for the purpose of carrying on business and sharing in the profits or losses or both."). That is, the question is whether,

> considering all the facts—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent—the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise.

ORDER ON ADMISSIBILITY OF EXPERT TESTIMONY - 6

to Nex Gen and T-One were held for the owners of the property-owning LLCs and were not received by Mr. Loo in his personal capacity, but as the executive manager of the various family business entities. Professor Avi-Yonah's testimony is based on his education and experience, the Internal Revenue Code, treasury regulations, relevant case law, IRS formal and informal guidance, evidence and records produced in discovery, relevant tax publications, tax treatises, and the evidence relied upon by RA Byrd.

Based on the Court's review of the defense's disclosures, the Court finds that Professor Avi-Yonah is qualified as an expert under Federal Rule of Evidence 702, but because his disclosures do not explain the basis for his opinions, the Court cannot conclude that his opinions are reliable.

### III.  CONCLUSION

For the reasons stated above, the parties have shown that RA Byrd and Professor Avi-Yonah are qualified as experts. However, because their disclosures do not explain all their opinions or the basis for some or all of their opinions, the Court cannot conclude that those opinions are reliable. Because neither party has objected to the admissibility of the other's expert testimony,

---

*Culbertson*, 337 U.S. at 742. The Tax Court distilled from *Culbertson* eight factors to consider in measuring the parties' intent:

> [(1)] [t]he agreement of the parties and their conduct in executing its terms; [(2)] the contributions, if any, which each party has made to the venture; [(3)] the parties' control over income and capital and the right of each to make withdrawals; [(4)] whether each party was a principal and coproprietor, sharing a mutual proprietary interest in the net profits and having an obligation to share losses, or whether one party was the agent or employee of the other, receiving for his services contingent compensation in the form of a percentage of income; [(5)] whether business was conducted in the joint names of the parties; [(6)] whether the parties filed Federal partnership returns or otherwise represented to respondent or to persons with whom they dealt that they were joint venturers; [(7)] whether separate books of account were maintained for the venture; and [(8)] whether the parties exercised mutual control over and assumed mutual responsibilities for the enterprise.

*Luna v. Comm'r,* 42 T.C. 1067, 1077–78 (1964); *see also DJB Holding Corp. v. Comm'r*, 803 F.3d 1014, 1022–23 (9th Cir. 2015) (same). The partners' intent is a question of fact. *Culbertson*, 337 U.S. at 741–42. According to Professor Avi-Yonah, the *de facto* partnership formed by Mr. Loo and others would be "governed by normal partnership tax and basis rules." However, Avi-Yonah does not provide any basis for concluding that Mr. Loo and the other individuals and entities constituted a partnership under the relevant inquiry, nor does he explain his opinion that the distributions in question should be tax-free.

ORDER ON ADMISSIBILITY OF EXPERT TESTIMONY - 7

1  the Court plans to make its reliability findings following their testimony at trial. Alternatively, the
2  parties may submit supplemental disclosures prior to trial.
3      Dated this 24th day of June, 2025.

<br>

                                        Lauren King
                                        United States District Judge